**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JUDITH A. ZIPKIN, SB# 118449
PAUL A. DESROCHERS, SB# 214855
One Sansome Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882

Attorneys for Defendants
Teck Cominco American Incorporated and
Teck Cominco Advanced Materials Incorporated

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1 through 500, inclusive;<br><br>Defendants. | CASE NO. CGC-05-444128<br><br>**NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT** |

TO PLAINTIFFS CARLETTA JUSTICE AND YOLANDA JUSTICE AND THEIR

ATTORNEY OF RECORD:

PLEASE TAKE NOTICE THAT a Notice of Removal of this action was filed in the United

States District Court for the Northern District of California, San Francisco Division, on May 19,

2006, under Federal Case Number C06-3328 MHP.

A copy of the said Notice of Removal, and accompanying court documents, are attached to

this Notice and are served and filed herewith.

DATED: May 19, 2006        LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
PAUL A. DESROCHERS
Attorneys for Defendants
Teck Cominco American Incorporated and
Teck Cominco Advanced Materials Incorporated

4851-6373-0945.1        -1-

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

**PROOF OF SERVICE**
*Justice, etc., et al. v. Does 1-500, et al.*

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the within action. My business address is One Sansome Street, Suite 1400, San Francisco, California 94104.

On May 19, 2006, I served the following document described as **SEE ATTACHED LIST** on all interested parties in this action by placing [X] a true copy [ ] the original thereof enclosed in sealed envelopes addressed as follows:

Clayton W. Kent                                        Attorneys for Plaintiffs CARLETTA
Brayton Purcell, LLP                                   JUSTICE and YOLANDA JUSTICE
222 Rush Landing Road
Novato, CA 94948-6169

[ ]    (BY FACSIMILE) The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine. Pursuant to Rule 2008(e)(4), I caused the machine to print a record of the transmission.

[X]    (BY MAIL, 1013a, 2015.5 C.C.P.)

    [X]    I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    (BY OVERNIGHT DELIVERY/COURIER)

    [X]    I delivered such envelope to an authorized courier or driver authorized by the express service carrier to receive documents in an envelope or package designated by the express service carrier with delivery fees provided for.

[ ]    (BY MESSENGER) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a messenger for personal service. (A proof of service executed by the messenger will be filed in compliance with the *Code of Civil Procedure*.)

[X]    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 19, 2006 at San Francisco, California.

                                                      Shawn Adams

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4814-5347-2512.1

**DOCUMENTS SERVED**

1.  Notice to Adverse Party of Removal to Federal Court;

2.  Notice of Removal of Action and Removal Petition Pursuant to 28 U.S.C. § 1441(b) (Diversity), filed with this Court on May 19, 2006;

3.  Certificate of Interested Parties;

4.  Order Setting Initial Case Management Conference and ADR Deadlines;

5.  "ECF Registration Information Handout" for the U.S. District Court, Northern District of California;

6.  "Welcome to the U.S. District Court, San Francisco" Information Sheet; and

7.  "Notice of Availability of Magistrate Judge to Exercise Jurisdiction" form.

4814-5347-2512.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

Exh 1

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JUDITH A. ZIPKIN, SB# 118449
    E-Mail: zipkin@lbbslaw.com
PAUL A. DESROCHERS, SB# 214855
    E-Mail: desrochers@lbbslaw.com
One Sansome Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882

Attorneys for Defendants
Teck Cominco American Incorporated and
Teck Cominco Advanced Materials Incorporated

E-filing

MHP

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CARLETTA JUSTICE, a minor, and
YOLANDA JUSTICE, a minor, by and through
their guardian ad litem, BOBBY BROWN,

        Plaintiffs,

        v.

DOES 1 TO 500, inclusive

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. C 06 3328

NOTICE OF REMOVAL OF ACTION AND
REMOVAL PETITION PURSUANT TO 28
U.S.C. § 1441(b) (Diversity)

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

      **PLEASE TAKE NOTICE** that Defendants Teck Cominco American Incorporated ("TCA

Inc.") and Teck Cominco Advanced Materials Incorporated ("TCAM Inc.") hereby remove to this

Federal Court, the State Court action described below.

      1.     On August 17, 2005, a Complaint was filed in the Superior Court of the State of

California in and for the County of San Francisco entitled CARLETTA JUSTICE, a minor, and

YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN v. DOES

1 through 500, inclusive, Case No. CGC-05-444128. A true and correct copy of the Complaint dated

August 17, 2005 is attached hereto as Exhibit A and incorporated by this reference.

///

-1-
NOTICE OF REMOVAL

4814-7103-9233.1

2.    On March 21, 2006, an Amendment to Complaint to Substitute the True Names of DOE Defendants was filed in the Superior Court of the State of California Case No. CGC-05-444128. A true and correct copy of the Amendment to Complaint dated March 20, 2006 is attached hereto as Exhibit B and incorporated by this reference.

3.    On March 21, 2006, a First Amended Complaint ("FAC") was filed in the Superior Court of the State of California Case No. CGC-05-444128. A true and correct copy of the FAC dated March 20, 2006 is attached hereto as Exhibit C and incorporated by this reference.

4.    Defendants TCA Inc. and TCAM Inc. first received notice of their involvement in this action when they were served with the Summons, Complaint, First Amended Complaint, Amendment, and related materials on April 21, 2006. Neither TCA Inc. or TCAM Inc. were served with any prior pleadings.

5.    This action is a civil action over which this Court has original jurisdiction pursuant to Title 28 of the United States Code, section 1332, and may be removed to this Court by defendants pursuant to Title 28 United States Code, section 1441(b), in that it is a civil action between citizens of different states as well as an action between plaintiffs who are citizens of the United States and a defendant who is not a citizen of the United States, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.    TCA Inc. and TCAM Inc. are informed and believe that plaintiffs CARLETTA JUSTICE and YOLANDA JUSTICE, at the time this action was commenced, were and still are citizens of the State of California. FAC, ¶ 16 ("At all times relevant herein, plaintiffs CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, ... were residents of the County of San Francisco, State of California ...").

7.    TCA Inc., at the time this action was commenced, was and still is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Spokane, Washington, and was not and is not a citizen of the State of California wherein this action was brought. Thus, TCA Inc.'s principal place of business is and, at all pertinent times, including the time when the state court action was filed and currently, has been the State of Washington, and not California.

4814-7103-9233.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

8.    TCA Inc.'s executive and administrative functions are centralized in Spokane, Washington which is commonly referred to as TCA Inc.'s Home Office.

9.    Similarly, at the time this action was commenced, TCAM Inc. was and still is a corporation organized and existing under the laws of the State of Washington, and, although it has an office in California, its executive and administrative functions are centralized in Spokane, Washington.

10.    TCA Inc. and TCAM Inc. are informed and believe that defendant Teck Cominco Limited is a corporation organized and existing under the laws of Vancouver, British Columbia, Canada with its principal place of business in Vancouver, British Columbia, and was not and is not a citizen of the United States or of the State of California wherein this action was brought. FAC, ¶ 8 ("... at all times relevant herein, defendant TECK COMINCO LIMITED was a corporation duly organized and existing under and by virtue of the laws of Vancouver, British Columbia, Canada ...").

11.    The First Amended Complaint also names "DOES 1 through 500, inclusive," as defendants in this lawsuit. According to 28 U.S.C. section 1441(a), "for purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

12.    Although the Complaint does not specify a particular total of claimed damages, it is apparent that the amount in controversy is well in excess of $75,000. Plaintiffs allege that they have suffered "(1) severe physical pain and discomfort; (2) painful and protracted medical examinations, tests and treatments; (3) the abnormal disruption of their ordinary daily lives and activities; (4) anxiety, fear, and severe mental and emotional distress; (5) permanent physical and mental injuries that have and will continue to retard, delay and/or diminish their educational, social, vocational, and intellectual development, as well as their past, present and future earning capacity, (6) past and future medical bills, expenses and costs of examinations, tests, therapy and treatment; (7) past and future costs for social, educational and vocational training and rehabilitation; (8) past and future loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses; and (9) other general and special damages." (FAC ¶ 25.) It appears that the amount in controversy satisfies the jurisdictional requirement.

///

4814-7103-9233.1

-3-

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

13.    Removing parties are not in possession of any pleadings filed in the action entitled CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN v. DOES 1 through 500, inclusive, Case No. CGC-05-444128, other than those attached to this notice of removal and removal petition.

14.    A copy of this Notice of Removal will promptly be filed with the San Francisco Superior Court.

DATED: May 19, 2006                LEWIS BRISBOIS BISGAARD & SMITH LLP


By    _____
PAUL A.  DESROCHERS
Attorneys for Defendants
Teck Cominco American Incorporated and Teck
Cominco Advanced Materials Incorporated

4814-7103-9233.1

-4-

NOTICE OF REMOVAL

Exh A

EXHIBIT A

CLAYTON W. KENT, ESQ., S.B. #123164
DAVID PAI, ESQ., S.B. #227058
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
PO Box 6169
Novato, California 94948-6169

Attorneys for Plaintiffs

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

AUG 1 7 2005

GORDON PARK-LI, CLERK
BY: _____ PARAM NATT
                    Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

PLAN I    JAN 2 0 2006 9ºº AM

DEPARTMENT 212

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN, *By And Through Their Guardian As Litem, Bobby Brown* Plaintiffs, vs. DOES 1-500, inclusive, Defendants. | No. CGC-05-444128 **COMPLAINT FOR DAMAGES** 1. Negligence; 2. Strict Products Liability; 3. Concert of Action; and 4. Intentional Tort |

COME NOW plaintiffs, CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN, and complain and allege as against defendants, and each of them, as follows:

**FACTS COMMON TO ALL CAUSES OF ACTION**

1.    Plaintiffs CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN, at all times relevant herein were residents of the County of San Francisco, State of California, and resided in the real property commonly identified as 316 Valencia Street.

2.    The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 500, inclusive, are unknown to

K:\Medmal\8722\Complaint.DOE.pld.wpd                1

plaintiffs at this time. Plaintiffs therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this complaint accordingly. Plaintiff is informed and believes, and upon such information and belief alleges that each of said fictitiously named defendants is responsible in some manner for the occurrences and events herein alleged and that damages as herein alleged were proximately caused, either in whole or in part, by such acts and events. Plaintiffs are informed and believe and thereon allege that defendants are business entities authorized to conduct, and did conduct business within the State of California, and derived substantial revenue from the sale and use of its products in the State of California, County of San Francisco.

3.    Plaintiff is informed and believes, and upon such information and belief alleges that at all times relevant herein each of the defendants herein was the agent, servant and employee, co-venturer and co-conspirator of each of the remaining defendants, and was at all times relevant herein, acting within the scope of such agency, employment, joint venture and conspiracy.

4.    Whenever in this Complaint reference is made to "defendants, and each of them," such allegation shall be deemed to mean the acts of defendants acting individually, jointly, and/or severally.

5.    Plaintiff CARLETTA JUSTICE, an minor, is the daughter of BOBBY BROWN, and was born on November 3, 1989. Plaintiff YOLANDA JUSTICE, a minor, is the daughter of BOBBY BROWN, and was born on November 8, 1988.

6.    From the period commencing with her birth up to and including on or about July 1991, plaintiff CARLETTA JUSTICE resided at 316 Valencia Street, in the City of San Francisco, State of California. From the period commencing on or about September 1989, up to and including on or about July 1991, plaintiff YOLANDA JUSTICE resided at 316 Valencia Street, in the City of San Francisco, State of California. During this period of time, the surfaces at said premises were covered with paint containing lead furnished by defendants or their predecessors in interest which was hazardous to the health and well-being of plaintiffs.

7.    At the time plaintiffs resided at said premises, they were ignorant of the fact that

K:\Medina\M722\Complaint.DOE.pld.wpd                    2

their residence contained lead paint. It was not until on or about July 1991 that plaintiffs' guardian ad litem, BOBBY BROWN, first became aware of such hazardous condition.

8. On or about July 1991, plaintiffs' guardian ad litem, BOBBY BROWN, discovered that lead paint covered the walls, window sills, doorways and other appurtenances of said residence.

9. At numerous times during the period from on or about September 1989, for plaintiff YOLANDA JUSTICE, and November 3, 1989 for plaintiff CARLETTA JUSTICE, and continuing up to and including July 1991 for both plaintiffs, said plaintiffs ingested lead from paint particles which were airborne or otherwise contained in and around said premises.

10. In or about June 25 1991, plaintiff CARLETTA JUSTICE was diagnosed as having lead poisoning. In or about July 1991, plaintiff YOLANDA JUSTICE was diagnosed as having lead poisoning.

### FIRST CAUSE OF ACTION

#### (For Negligence as against DOES 1-500)

11. As and for a First Cause of Action, plaintiffs replead and reallege the allegations contained within paragraphs 1 through 10 of plaintiffs' Facts Common To All Causes Of Action, and incorporate the same herein as if set forth in full and verbatim.

12. Beginning as early as the 1920's, defendants, and each of them, or their predecessors in interest, knew or should have known that lead-based paints posed an unreasonable risk to the health and welfare of young children, such as plaintiffs, residing in premises where such paints were used because of a substantial likelihood of exposure to the lead by ingestion, inhalation or absorption of the said paint.

13. At all times mentioned herein, defendants, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, tested or failed to test, warned, failed to warn, or failed to adequately warn, labeled, distributed, offered for sale, sold, inspected, marketed, warranted, rebranded, manufactured for others, packaged or advertised, a certain substance, the generic name of which is lead-based paint, and other products containing said substance in that said substance caused personal injuries to minors and others, including the

plaintiffs, while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by said plaintiffs, minors and others.

14. Defendants had a duty to exercise due care in pursuance of the activities mentioned herein and have breached said duty of due care. Such duty of care extended to plaintiffs, and defendants, and each of them, breached such duty by, notwithstanding the evidence known to defendants that lead-based paints posed an unreasonable risk to the health and welfare of young children, including plaintiffs, exposed thereto, defendants or their predecessors in interest continued to furnish lead for paints to be used on surfaces and on other materials to which young children would foreseeably be exposed.

15. The lead poisoning of plaintiffs was the direct, foreseeable and proximate result of the conduct of defendants or their predecessors in interest as alleged in paragraph 14 above, which they knew or should have known would be applied to surfaces of dwellings accessible to young children, such as plaintiffs, residing therein.

16. As a result of the acts and/or conduct of defendants, and each of them, as hereinabove described, plaintiffs have suffered physical, mental, developmental and emotional injuries due solely to the ingestion, inhalation and/or absorption of lead-based paint. Said plaintiffs, as a result of the lead poisoning, have suffered severe pain, underwent painful and protracted medical examinations, tests and treatments, and continue to have to undergo the same, all of which have interrupted plaintiffs' ordinary and daily life and have caused them anxiety, mental distress and fear. Additionally, plaintiffs have suffered permanent injuries which have retarded and/or delayed, and which will continue to retard and/or delay their educational, social, vocational and intellectual development and diminished earning capacity, all to their general damage and special damage in amounts presently unknown but believed to be in excess of the jurisdictional minimum of this court, and according to proof.

17. As a result of the acts and/or conduct of defendants, and each of them, as hereinabove described, plaintiffs have incurred, and will continue to incur in the future, medical bills, expenses and costs for examinations, tests, therapy and treatment, as well as for social, educational and vocational training and rehabilitation, all in an amount presently unknown to

plaintiffs and plaintiffs will seek leave of this court to assert such amounts and amend this complaint to conform to proof at the time of trial.

18. As a further direct and proximate result of the said conduct of the defendants, and each of them, plaintiffs will incur loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which is presently unknown to plaintiffs and plaintiffs will seek leave of this court to assert such amounts and amend this complaint to conform to proof at the time of trial.

19. Defendants and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

20. Defendants are liable for the fraudulent, oppressive, and malicious acts of other defendants and each defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of the other defendants as set forth herein.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set forth below.

## SECOND CAUSE OF ACTION

### (For Strict Products Liability as against DOES 1-500)

21. As and for a Second Cause of Action, plaintiffs replead and reallege the allegations contained within paragraphs 1 through 10 of plaintiffs' Facts Common To All Causes Of Action and paragraphs 12, 16, 17, 18, 19, and 20 of plaintiffs' First Cause of Action and incorporate the same herein as if set forth in full and verbatim.

22. Defendants, and each of them, knew and intended that the lead-based paint and lead-based paint-containing products would be used by the purchaser or user without inspection for defects therein or in any of its components and without knowledge of the hazards involved in such use as hereinabove described.

23. Said lead-based paint and lead-based paint-containing products were defective, defective in design and unsafe for their intended purpose in that said lead-based paint and lead-

based paint-containing products did not perform as safely as expected by an ordinary consumer when used in an intended or reasonably known manner as ingestion, inhalation and/or absorption of lead-based paint particles or dust causes serious disease and/or death. The defects existed in said products at the time they left the possession of defendants. Said products did, in fact, cause personal injuries, including lead poisoning and other injury and damage, to exposed persons including plaintiffs herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

24. Ordinary consumers, including plaintiffs, did not know of the substantial danger of using said products. Said dangers were not readily recognizable by the ordinary consumer, and yet were readily known by defendants, and each of them. Defendants further failed to adequately warn of the risks to which plaintiffs and others similarly situated were exposed.

25. In researching, manufacturing, fabricating, designing, testing or failing to test, warning, buying, offering for sale, selling, inspecting, marketing, warranting, rebranding, manufacturing for others, packaging and advertising lead-based paint and lead-based paint-containing products, defendants did so with conscious disregard for the safety of consumers, such as plaintiffs, who came in contact with lead-based paint and lead-based paint-containing products, in that defendants had prior knowledge that there was a substantial risk of injury or death resulting from exposure to such products, including, but not limited to, lead poisoning, developmental disorders, mental retardation and other diseases of the blood and organs. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, defendants, and which knowledge was obtained by defendants on or before plaintiffs' exposure to lead-based paint.

26. The lead poisoning of plaintiffs was the direct, foreseeable and proximate result of the conduct of defendants or their predecessors in interest as alleged in paragraph 23 above, which they knew or should have known would be applied to surfaces of dwellings accessible to young children, such as plaintiffs, residing therein.

27. As a result of the acts and/or conduct of defendants, and each of them, as afore-stated, plaintiffs have suffered physical, mental, developmental and emotional injuries due solely

to the ingestion, inhalation and/or absorption of lead-based paint. Said plaintiffs, as a result of the lead poisoning, have suffered severe pain, underwent painful and protracted medical examinations, tests and treatments, and continue to have to undergo the same, all of which have interrupted plaintiffs' ordinary and daily life and have caused them anxiety, mental distress and fear. Additionally, plaintiffs have suffered permanent injuries which have retarded and/or delayed, and which will continue to retard and/or delay their educational, social, vocational and intellectual development and diminished earning capacity, all to their general damage and special damage in amounts presently unknown but believed to be in excess of the jurisdictional minimum of this court, and according to proof.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set forth below.

### THIRD CAUSE OF ACTION

### (For Concert of Action as against all Defendants)

28. As and for a Third Cause of Action, plaintiffs replead and reallege the allegations contained within paragraphs 1 through 10 of plaintiffs' Facts Common To All Causes Of Action, paragraphs 13 through 21 of plaintiffs' First Cause of Action and paragraphs 23 through 27 of plaintiffs' Second Cause of Action and incorporate the same herein as if set forth in full and verbatim.

29. At all times material hereto, defendants or their predecessors in interest were members of LEAD INDUSTRIES ASSOCIATION, INC., which was organized to serve the interests of those who mine, smelt, refine, manufacture and produce lead and lead products.

30. Acting by and through said Lead Industries Association, defendants, and each of them, or their predecessors in interest, conspired and/or acted in concert with each other to conceal from and mislead retailers, users, applicators, and parents of young children, including plaintiffs, with respect to the unreasonable risks and hazards posed to young children by the lead produced and marketed by them and by the paint containing such lead.

31. The injuries sustained by plaintiffs, as alleged hereinabove, were the direct, foreseeable and proximate result of said conspiracy and/or concert of action.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set forth below.

### FOURTH CAUSE OF ACTION

#### (For Intentional Tort as against DOES 1-500)

32.    As and for a Fifth Cause of Action, plaintiffs replead and reallege the allegations contained within paragraphs 1 through 10 of plaintiffs' Facts Common To All Causes Of Action, paragraphs 12, 16, 17, 18, 19, 20, and 21 of plaintiffs' First Cause of Action, paragraphs 23 through 27 of plaintiffs' Second Cause of Action, and paragraphs 29 through 31 of plaintiffs' Third Cause of Action incorporate the same herein as if set forth in full and verbatim.

31.    At all times relevant herein, the defendants, and each of them, owed plaintiffs a duty, as provided for in Section 1708 through 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the plaintiffs.  When a duty to act was imposed, as set forth herein, the defendants, and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the plaintiff as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) and, more specifically, included suggestions of fact which were not true and which defendants, and each of them, did not believe to be true; assertions of fact which were not true and which defendants, and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the aforementioned Civil Code sections.

32.    Since on or before 1920, the defendants, their successors and/or predecessors in interest, and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the lead-based paint products referred to herein were and are hazardous to the health and safety of plaintiffs, and others minors. The defendants, their successors and/or predecessors in interest, and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time.  With intent to deceive plaintiffs and plaintiffs' guardian ad litem, and others in

K:\Wedma\8722\Complaint.DOE.pld.wpd                         8

plaintiffs' position, and with intent that they and such other minors should be and remain ignorant of such facts with intent to induce plaintiffs and such others to alter their positions to their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)    Defendants, their successors and/or predecessors in interest, and each of them, did not label any of the aforementioned lead-based paint products regarding the hazards of such materials and products to the health and safety of minors such as plaintiffs and others in plaintiffs' position when the knowledge of such hazards was existing and known to defendants, their successors and/or predecessors in interest, and each of them, since 1920. By not labeling such materials as to their said hazards, defendants, their successors and/or predecessors in interest and each of them, caused to be suggested as a fact to plaintiffs and plaintiffs' guardian ad litem, and customers in general that it was safe for plaintiffs to play in close proximity to such materials when in fact it was not true and defendants, their successors and/or predecessors in interest, and each of them, did not believe it to be true;

(b)    Defendants, their successors and/or predecessors in interest, and each of them, suppressed information relating to the danger of use of the aforementioned products by requesting the suppression of information to the plaintiffs and the general public concerning the dangerous nature of the aforementioned materials to minors, by not allowing such information to be disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when defendants, their successors and/or predecessors in interest, and each of them, were bound to disclose such information;

(c)    Defendants, their successors and/or predecessors in interest, and each of them, suppressed from plaintiffs, plaintiffs' guardian ad litem, and the public in general, medical and scientific data and knowledge of the results of studies that clearly established the hazard and dangers of lead-based paint products to minors.

(d)    Defendants, their successors and/or predecessors in interest, and each of them,

K:\Medmal\1722\Complaint-DOE.pld.wpd

belonged to, participated in, and financially supported the LEAD INDUSTRIES ASSOCIATION, INC. and other industry organizations which, for and on behalf of defendants, their successors and/or predecessors in interest, and each of them, actively promoted the suppression of information of danger to minors and other users of the aforementioned products, thereby misleading plaintiffs and plaintiffs' guardian ad litem by the suggestions and deceptions set forth above in this cause of action.

(e)    Defendants, their successors and/or predecessors in interest, and each of them, failed to warn plaintiffs, plaintiffs' guardian ad litem, and others of the nature of said products which were dangerous when inhaled, ingested and/or absorbed and which could cause devastating disease and physiological effects without noticeable trauma, despite the fact that defendants, their successors and/or predecessors in interest, and each of them, possessed knowledge and were under a duty to disclose that said products were dangerous and a threat to the health of persons coming into contact therewith;

33.    Defendants, their successors and/or predecessors in interest, and each of them, having such aforementioned knowledge, and the duty to inform plaintiffs, plaintiffs' guardian ad litem and the general public about the true facts, and knowing the plaintiffs did not and could not possess such knowledge and would inhale, ingest and/or absorb such lead-based paint product innocently, acted falsely and fraudulently and with full intent to cause plaintiffs to remain unaware of the true facts and to induce plaintiffs to live and play in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

34.    The herein-described conduct of said defendants was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of minor children, including plaintiffs. Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, plaintiffs pray for judgment as against defendants, and each of them, as follows:

1. General Damages according to proof;

2. Special Damages according to proof;

3. Punitive damages according to proof;

4. Costs of suit herein incurred; and

5. For such further and other relief as this court deems just and proper.

Dated: ___8/17/05___                    BRAYTON PURCELL LLP

By: _____
    David Pai
    Attorneys for Plaintiffs

Exh B

CLAYTON W. KENT, ESQ., S.B. #123164
A. RUSSELL MARTIN, S.B. # 226244
BRAYTON✦PURCELL LLP
Attorneys at Law
222 Rush Landing Road
PO Box 6169
Novato, California 94948-6169

Attorneys for Plaintiffs

MAR 2 1 2006

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN,

        Plaintiffs,

vs.

DOES 1-500, inclusive,

        Defendants.

No. CGC-05-444128

**AMENDMENT TO COMPLAINT TO SUBSTITUTE THE TRUE NAMES OF DOE DEFENDANTS**

At the time the original Complaint was filed, Plaintiffs were ignorant of the true names of certain defendants, stated that fact in their Complaint, and designated those defendants by fictitious names. Those defendants' true name have now been discovered. Consequently, plaintiffs hereby amend the Complaint, as follows:

1.    The true name of TECK COMINCO AMERICAN INCORPORATED is hereby substituted for the fictitious name DOE ONE wherever it appears in the Complaint;

2.    The true name of TECK COMINCO ADVANCED MATERIALS INCORPORATED is hereby substituted for the fictitious name DOE TWO wherever it appears in the Complaint;

3.    The true name of TECK COMINCO LIMITED is hereby substituted for the

K:\Medmal\8722\Complaint.amend.pld.(Cominco).wpd

1

**AMENDMENT TO COMPLAINT**

fictitious name DOE THREE wherever it appears in the Complaint.

Dated: March 20, 2006

BRAYTON❖PURCELL LLP

By: _____
A. Russell Martin
Attorneys for Plaintiff

K:\Medma\8722\Complaint.amend.pld.(Cominco).wpd

2

**AMENDMENT TO COMPLAINT**

CLAYTON W. KENT, ESQ., S.B. #123164
A. RUSSELL MARTIN, S.B. # 226244
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
PO Box 6169
Novato, California 94948-6169

Attorneys for Plaintiffs

MAR 2 ? 2006

BY:

Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN,

Plaintiffs,

vs.

DOES 1-500, inclusive,

Defendants.

No. CGC-05-444128

FIRST AMENDED COMPLAINT

1. Negligence;
2. Strict Products Liability;
3. Conspiracy & Concert of Action;
4. Fraud and Deceit

COME NOW plaintiffs, CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN, and complain and allege as against defendants, and each of them, as follows:

## DEFINITIONS

1. The following substances and products are hereinafter sometimes collectively referenced as "LEAD PRODUCTS": (1) raw, refined or processed lead; (2) a certain substance, the generic name of which is lead-based paint or lead paint; and (3) other chemicals, compounds, substances and/or products containing lead.

2. The terms "SUPPLY," "SUPPLIED," "SUPPLYING," "MANUFACTURE," "MANUFACTURED," and "MANUFACTURING" all refer to the following conduct, including, without limitation, mining, collecting, processing, refining, researching, testing or failing to test,

K:\Modma\N4722\Complaint amnd.pld.wpd                 1
AMENDED COMPLAINT

inspecting or failing to inspect, designing, compounding, fabricating, manufacturing, packaging, marketing, advertising, labeling, rebranding, warning, failing to warn, failing to adequately warn, distributing, furnishing, providing, supplying, warranting, offering for sale, and/or selling.

3.    The terms "SELL," "SOLD," and "SELLING" all refer to the following conduct, including, without limitation,  processing, refining, researching, testing, inspecting, designing, compounding, fabricating, manufacturing, packaging, marketing, advertising, labeling, rebranding, warning, distributing, furnishing, providing, supplying, warranting, offering for sale, and/or selling.

4.    The terms "EXPOSE," "EXPOSED" and "EXPOSURE" mean that the referenced material, substance, chemical or element entered the person's body through ingestion, inhalation, and/or absorption.

# FACTS COMMON TO ALL CAUSES OF ACTION

5.    At the time the original Complaint was filed, plaintiffs were ignorant of defendants' true names of certain defendants, stated that fact in their Complaint, and designated those defendants by fictitious names.  Those defendants' true name have now been discovered. Consequently, plaintiffs are simultaneously filing and serving an Amendment to Complaint to Substitute the True Names of Doe Defendants wherein the true name of TECK COMINCO AMERICAN INCORPORATED is substituted for the fictitious name DOE ONE wherever it appears in the Complaint; the true name of TECK COMINCO ADVANCED MATERIALS INCORPORATED is substituted for the fictitious name DOE TWO wherever it appears in the Complaint; and the true name of TECK COMINCO LIMITED is substituted for the fictitious name DOE THREE wherever it appears in the Complaint.

6.    Plaintiffs are informed and believe, and upon such information and belief allege, that at all times relevant herein, TECK COMINCO AMERICAN INCORPORATED, was a corporation duly organized and existing under and by virtue of the laws of the State of Washington, which is registered with the California Secretary of State to do business within the State of California, and maintains principal places of business and/or conducts business within the County of San Francisco, State of California.

K:\Medina\8722\Complaint.amend.pld.wpd
AMENDED COMPLAINT                                2

7.    Plaintiffs are informed and believe, and upon such information and belief allege, that at all times relevant herein, defendant TECK COMINCO ADVANCED MATERIALS INCORPORATED was a corporation duly organized and existing under and by virtue of the laws of the State of Washington, which is registered with the California Secretary of State to do business within the State of California, and maintains principal places of business and/or conducts business within the County of San Francisco, State of California.

8.    Plaintiffs are informed and believe, and upon such information and belief allege, that at all times relevant herein, defendant TECK COMINCO LIMITED was a corporation duly organized and existing under and by virtue of the laws of Vancouver, British Columbia, Canada, with principal places of business and/or conducting business within the County of San Francisco, State of California.

9.    The true names and capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 4 through 500, inclusive, are unknown to plaintiffs at this time. Plaintiffs therefore sue said defendants by such fictitious names. When the true names and capacities of said defendants have been ascertained, plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and based upon such information and belief allege that each of said fictitiously named defendants is responsible in some manner for the occurrences and events herein alleged and that damages as herein alleged were directly, legally and proximately caused, either in whole or in part, by such acts and events. Plaintiffs are informed and believe, and thereon allege that defendants are business entities authorized to conduct, and did conduct business within the State of California, and derived substantial revenue from the sale and use of its products in the State of California, County of San Francisco.

10.    Plaintiffs are informed and believe, and upon such information and belief allege that at all times relevant herein defendants, and each of them, were the agents, servants, employees, joint venturers, and/or co-conspirators of their co-defendants and were, as such, were acting within the scope, course and authority of said agency, employment, joint venture and/or conspiracy, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant,

K:\Modine\8722\Complaint amend.pld.wpd
AMENDED COMPLAINT                                    3

employee and/or joint venturer and ratified their acts as alleged herein.

11. Whenever in this Complaint reference is made to "defendant" or "defendants," such allegation shall be deemed to mean the conduct of defendants, their predecessors in interest, their successors in interest, their agents, servants, employees, joint venturers, and/or co-conspirators acting individually, jointly, and/or severally.

12. Defendants TECK COMINCO LIMITED; TECK COMINCO AMERICAN INCORPORATED; TECK COMINCO ADVANCED MATERIALS INCORPORATED and DOES 4 through 55, inclusive, are hereinafter sometimes collectively referenced as "LEAD SUPPLIERS."

13. Defendant DOES 50 through 105, inclusive, are hereinafter sometimes collectively referenced as "LEAD PAINT COMPANIES."

14. LEAD SUPPLIERS and LEAD PAINT COMPANIES, and each of them, are, and at all times mentioned herein were, singularly and jointly, negligently, carelessly and/or recklessly engaged in the business of SUPPLYING, MANUFACTURING and SELLING LEAD PRODUCTS, including the specific lead paint and other LEAD PRODUCTS referenced herein.

15. Defendant DOES 100 through 150, inclusive, hereinafter sometimes collectively referenced as "LEAD PAINT RETAILERS" are, and at all times herein mentioned were, engaged in the business of SELLING LEAD PRODUCTS, including the specific lead paint and other LEAD PRODUCTS referenced herein, at retail to members of the general public in the County of San Francisco, State of California.

16. At all times relevant herein, plaintiffs CARLETTA JUSTICE, a minor, and YOLANDA JUSTICE, a minor, by and through their guardian ad litem, BOBBY BROWN, were residents of the County of San Francisco, State of California, and resided in the real property commonly identified as 316 Valencia Street (hereinafter the "RESIDENCE").

17. Plaintiff CARLETTA JUSTICE, a minor, is a daughter of BOBBY BROWN, and was born on November 3, 1989. Plaintiff YOLANDA JUSTICE, a minor, is another daughter of BOBBY BROWN, and was born on November 8, 1988.

18. Plaintiff CARLETTA JUSTICE resided in the RESIDENCE from the period

commencing with her birth on November 3, 1989 and continuing through approximately July 1991. Plaintiff YOLANDA JUSTICE resided in the RESIDENCE from the period commencing on or about September 1989 and continuing through approximately July 1991.

19.    Sometime before or during this time period, the owner of the RESIDENCE, or his/her/its agent, employee or other person or entity acting on his/her/its behalf (hereinafter sometimes collectively referenced as "LANDLORD"), purchased LEAD PRODUCTS from defendants, and each of them, in the County of San Francisco, California, and used those LEAD PRODUCTS in the RESIDENCE.

20.    Consequently, during this time period, the surfaces of the RESIDENCE were covered with lead paint and other LEAD PRODUCTS which were extremely hazardous to the health and well-being of plaintiffs. All of these LEAD PRODUCTS were SUPPLIED, MANUFACTURED and/or SOLD by defendants, and each of them.

21.    At the time plaintiffs resided in the RESIDENCE, they were ignorant of the fact that it contained lead paint or other LEAD PRODUCTS. It was not until on or about July 1991 that plaintiffs' guardian ad litem, BOBBY BROWN, first became aware of that hazardous condition.

22.    On or about July 1991, plaintiffs' guardian ad litem, BOBBY BROWN, discovered that lead paint and other LEAD PRODUCTS covered the surfaces of the RESIDENCE, including, without limitation, the walls, window sills, doorways and appurtenances.

23.    On numerous occasions during the time period that the plaintiffs lived in the RESIDENCE up to and including approximately July 1991, they were EXPOSED to particles of lead paint and other LEAD PRODUCTS, which were airborne or otherwise contained in and around the RESIDENCE.

24.    In or about June 25 1991, plaintiff CARLETTA JUSTICE was diagnosed as having lead poisoning. In or about July 1991, plaintiff YOLANDA JUSTICE was diagnosed as having lead poisoning.

25.    As a direct, legal and proximate result of the conduct of defendants, and each of

them, as described herein, plaintiffs have, and in the future will, suffer the following general and special damages (hereinafter sometimes collectively referenced as "DAMAGES") due solely to their EXPOSURE to LEAD PRODUCTS: (1) severe physical pain and discomfort; (2) painful and protracted medical examinations, tests and treatments; (3) the abnormal disruption of their ordinary daily lives and activities; (4) anxiety, fear, and severe mental and emotional distress; (5) permanent physical and mental injuries that have and will continue to retard, delay and/or diminish their educational, social, vocational and intellectual development, as well as their past, present and future earning capacity; (6) past and future medical bills, expenses and costs for examinations, tests, therapy and treatment; (7) past and future costs for social, educational and vocational training and rehabilitation; (8) past and future loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses; and (9) other general and special damages. The full nature, extent and amount of these DAMAGES is presently unknown to plaintiffs, but are believed to exceed the jurisdictional minimum of this court. Plaintiffs will seek leave of this court to amend this complaint to recover such DAMAGES according to proof at the time of trial.

## FIRST CAUSE OF ACTION

### (For Negligence as Against All Defendants)

26.    As and for a First Cause of Action, Plaintiffs incorporate each and every allegation set forth above, as though fully set forth verbatim herein, except those allegations inconsistent with an action for Negligence.

27.    Beginning as early as the 1920's, defendants, and each of them, knew or should have known that lead-based paints and other LEAD PRODUCTS posed an unreasonable risk to the health and welfare of young children, such as plaintiffs, residing in premises where such products were used because of a substantial likelihood of EXPOSURE to the lead.

28.    Defendants, and each of them, owed plaintiffs a duty to exercise due care when performing the activities mentioned herein and to refrain from engaging in any conduct that would cause injury or damage to plaintiffs.

29.    Defendants, and each of them, breached that duty by continuing to SUPPLY,

MANUFACTURE and SELL LEAD PRODUCTS, including, without limitation, raw lead, processed lead, refined lead, lead paints and other lead-containing products, that were specifically designed and intended to be used on surfaces and on other materials to which plaintiffs and other young children would foreseeably be EXPOSED. Defendants engaged in said conduct notwithstanding the conclusive evidence known to defendants that LEAD PRODUCTS posed a serious and unreasonable risk to the health and welfare of plaintiffs and other young children who were EXPOSED thereto.

30. These LEAD PRODUCTS caused personal injuries to minors and others, including the plaintiffs, while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by said plaintiffs, minors and others.

31. Plaintiffs' lead poisoning was the direct, legal, and proximate result of the aforesaid conduct of defendants, and each of them, who knew or should have known that LEAD PRODUCTS, including, without limitation, raw lead, processed lead, refined lead, lead paints and other lead-containing products, would be applied to surfaces and other materials of dwellings accessible to young children, such as plaintiffs, residing therein.

32. As a direct, legal and proximate result of the conduct of defendants, and each of them, as described herein, plaintiffs suffered DAMAGES.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set forth below.

## SECOND CAUSE OF ACTION

### (For Strict Products Liability - Defective Design and Failure to Warn as Against All Defendants)

33. As and for a Second Cause of Action, Plaintiffs incorporate each and every allegation set forth above, as though fully set forth verbatim herein, except those allegations inconsistent with an action for Strict Products Liability - Defective Design and Failure to Warn.

34. Defendant LEAD PAINT COMPANIES are, and at all times mentioned herein were, engaged in the business of MANUFACTURING LEAD PRODUCTS for SALE to and use by retailers and members of the general public.

35. As a part of Defendant LEAD PAINT COMPANIES' business, he/she/it

MANUFACTURED and SOLD a line of LEAD PRODUCTS, including the specific LEAD PRODUCTS referenced herein.

36.    Defendant LEAD SUPPLIERS are, and at all times herein mentioned were, engaged in the business of SUPPLYING and SELLING LEAD PRODUCTS to manufacturers, retailers and the general public, and, in the course of such business, SUPPLIED and/or SOLD LEAD PRODUCTS to defendant LEAD PAINT COMPANIES for inclusion and incorporation into the latter companies' LEAD PRODUCTS.

37.    As a part of LEAD SUPPLIERS' business, he/she/it SUPPLIED the specific LEAD PRODUCTS referenced herein to defendant LEAD PAINT COMPANIES.

38.    Defendant LEAD SUPPLIERS knew and intended that the LEAD PRODUCTS he/she/it SUPPLIED to Defendant LEAD PAINT COMPANIES would be included and incorporated by the latter into his/her/its LEAD PRODUCTS.

39.    Defendant LEAD SUPPLIERS and LEAD PAINT COMPANIES knew and intended that their LEAD PRODUCTS, including the specific LEAD PRODUCTS referenced herein, were to be purchased by LEAD PAINT RETAILERS, and SOLD at retail to members of the general public in the County of San Francisco, State of California.

40.    Defendants, and each of them, at all times herein mentioned knew that all of the aforesaid LEAD PRODUCTS would be purchased and used by defendant LEAD PAINT RETAILERS, retail purchasers and other members of the general public without inspection for defects therein or in any of their component elements, chemicals, compounds, materials and/or substances.

41.    Sometime on or before the date plaintiffs were first EXPOSED to LEAD PRODUCTS, the LANDLORD purchased LEAD PRODUCTS from defendants, and each of them, in the County of San Francisco, California, and used those LEAD PRODUCTS in the RESIDENCE.

42.    LANDLORD only used the LEAD PRODUCTS in a way that was reasonably foreseeable to defendants, and each of them.

43.    At that time, and at all other times mentioned herein, the LEAD PRODUCTS that

the LANDLORD purchased and used in the RESIDENCE contained LEAD PRODUCTS, which the defendants, and each of them, had SUPPLIED, MANUFACTURED and/or SOLD to their co-defendants and the general public as alleged herein.

44.     At all relevant times, these LEAD PRODUCTS were substantially the same as when they left the possession of defendants, and each of them, or any changes made thereto were reasonably foreseeable to defendants.

45.     At all relevant times, the design of the LEAD PRODUCTS was defective and unsafe for their intended use and purpose because the substantial dangers and risks they posed to consumers and the general public greatly outweighed any conceivable benefit of the design and the products did not perform as safely as an ordinary consumer would have expected.

46.     At all relevant times, these LEAD PRODUCTS were defective and unsafe for their intended use and purpose because defendants, and each of them, knew that they posed a serious, substantial and unreasonable danger to the health and welfare of plaintiffs, and other young children who were EXPOSED thereto, even when they were properly used for their intended purpose.

47.     At all relevant times, the defendants, and each of them, knew or reasonably should have known that these LEAD PRODUCTS were unreasonably and substantially dangerous or were likely to be substantially dangerous when used in a reasonably foreseeable manner.

48.     At all relevant times, the aforesaid LEAD PRODUCTS were further defective as a result of the defendants' failure (1) to give warning that the substantial danger and risk posed by the LEAD PRODUCTS rendered them unsafe for their intended or reasonably foreseeable use and (2) to instruct the user on the safe use of such products.

49.     Ordinary consumers, users, bystanders and/or the general public would not realize the substantial danger and risks posed by these LEAD PRODUCTS unless they were given adequate warnings or instructions.

50.     A reasonable manufacturer, distributor, supplier, seller or retailer under the same or similar circumstances would have warned of the danger or instructed users on the safe use of these products.

51.    Plaintiff is informed and believes, and thereon alleges that at all times said defendants had specific knowledge of the substantial danger and risk or could have known the same by the application of scientific knowledge available at the time of the products' design, fabrication, manufacture, supply, distribution and/or sale.

52.    As a direct, legal and proximate result of the conduct of defendants, and each of them, as described herein, plaintiffs have suffered DAMAGES.

53.    Defendants and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of each of the acts set forth herein.

54.    Defendants are liable for the oppressive, malicious and fraudulent acts of other defendants and each defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of the acts of each of the other defendants as set forth herein.

55.    At all times herein mentioned defendants knew that the LEAD PRODUCTS would be applied to surfaces and other materials of dwellings accessible to young children, such as plaintiffs, as alleged herein, and that these substances and products would, therefore, cause personal injury and property damage to plaintiffs and the other members of the general public. Yet, notwithstanding this knowledge, defendants maliciously, oppressively, fraudulently, despicably, and in willful and conscious disregard of the safety of such persons and of the plaintiff, recklessly and intentionally engaged in the tortious conduct described herein without giving any notice of the defect to the plaintiffs and other members of the general public thereby directly, proximately and legally causing plaintiffs to be exposed to serious harm and danger. Plaintiffs are therefore entitled to an award of exemplary or punitive damages.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set forth below.

## THIRD CAUSE OF ACTION

### (For Conspiracy and Concert of Action as Against All Defendants)

56.    As and for a Third Cause of Action, Plaintiffs incorporate each and every

K:\Modim\M722\Complaint amcnd.pld.wpd
AMENDED COMPLAINT                                       10

allegation set forth above, as though fully set forth verbatim herein, except those allegations inconsistent with claim for Concert of Action.

57.    At all times material hereto, defendants, and each of them, were members of the Lead Industries Association, Inc. (hereinafter "LEAD ASSOCIATION"), which was organized to serve the interests of those who mine, smelt, refine, manufacture and produce lead and lead products.

58.    Acting by and through the LEAD ASSOCIATION, defendants, and each of them, conspired, agreed and/or acted in concert with each other to actively, intentionally and systematically suppress and conceal from and mislead retailers, users, applicators, young children, including plaintiffs, and their parents, and the general public regarding the serious dangers, hazards and risks that defendants' LEAD PRODUCTS posed to young children.

59.    Defendants, and each of them, were fully aware that their co-defendants, LEAD ASSOCIATION, and other co-conspirators planned to commit and were actively engaged in committing the wrongful conduct alleged herein.

60.    Defendants, and each of them, cooperated in the commission of the wrongful conduct alleged herein, and/or expressly or implicitly formed an agreement with their co-defendants, LEAD ASSOCIATION, and other co-conspirators to cooperate towards the commission of same.

61.    At all relevant times, defendants, and each of them, fully intended that the wrongful conduct alleged herein be committed.

62.    As a direct, legal and proximate result of said conduct Plaintiffs' suffered DAMAGES.

63.    At all times herein mentioned herein, defendants knew that their LEAD PRODUCTS would be applied to surfaces and other materials of dwellings accessible to young children, such as plaintiffs, as alleged herein, and that these substances and products would, therefore, cause personal injury and property damage to plaintiffs and the other members of the general public. Yet, notwithstanding this knowledge, defendants maliciously, oppressively, fraudulently, despicably, and in willful and conscious disregard of the safety of such persons and

of the plaintiff herein, recklessly and intentionally engaged in the tortious conduct described herein without giving any notice of the defect to the plaintiffs and other members of the general public thereby directly, proximately and legally causing plaintiffs to be exposed to serious harm and danger. Plaintiffs are therefore entitled to an award of exemplary or punitive damages.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set forth below.

## FOURTH CAUSE OF ACTION
### (For Intentional Misrepresentation and/or Concealment as Against All Defendants)

64.    As and for a Fourth Cause of Action, Plaintiffs incorporate each and every allegation set forth above, as though fully set forth verbatim herein, except those allegations inconsistent with an action for Intentional Misrepresentation and/or Concealment.

65.    At all times relevant herein, the defendants, and each of them, owed plaintiffs a duty, as provided for in Section 1708 through 1710 of the California Civil Code, to abstain from fraudulent and deceitful conduct that would injure and harm the person, property or rights of the plaintiffs.

66.    The defendants, and each of them, acted or failed to act in violation of that duty thereby causing injury to the plaintiffs as more fully set forth herein. Defendants' acts and omissions fell within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) as more specifically set forth below.

67.    Since on or before 1920, the defendants, and each of them, have known and possessed the true medical and scientific facts, data, studies, and other knowledge and information, which clearly indicated that LEAD PRODUCTS were and are hazardous and dangerous to the health and safety of plaintiffs, and others minors. The defendants, and each of them, have known of the dangerous propensities and properties of the aforementioned materials and products since before that time.

68.    Defendants' intentional misrepresentations or concealments, included, without limitation, the following: (1) the intentional representation, assertion and suggestion of important facts, which were not true, and which defendants, and each of them, knew to be false; (2) the

K:\Modern\M727\Complaint amend pld.wpd                    12
**AMENDED COMPLAINT**

intentional representation, assertion and suggestion of important facts, which were not true, and which defendants, and each of them, made recklessly without regard for the truth and without reasonable grounds for believing them to be true; (3) the intentional concealment and suppression of important facts when a duty existed to disclose them and plaintiffs did not know the concealed facts; (4) the intentional concealment and suppression of important facts that were known only to defendants, and which plaintiffs did not know and could not otherwise discover; and (5) the intentional and active concealment and suppression of important facts in a manner that prevented plaintiffs from discovering such facts which were completely unknown to them.

69.    For example, defendants, and each of them, engaged in the following conduct with the intent to deceive plaintiffs, their guardian ad litem, others in plaintiffs' position, and the general public, and with the further intent that plaintiffs should be and remain ignorant of the true facts in order to induce them to alter their positions to their injury and/or risk and to gain unfair advantages over them:

(a)    Defendants, and each of them, failed to label any of their LEAD PRODUCTS regarding the serious hazards, dangers and risks that such substances, materials and products presented to the health and safety of plaintiffs and other minors in plaintiffs' position, even though the defendants, and each of them, knew or should have known about such hazards, dangers and risks since 1920. By failing to provide these labels, defendants, and each of them, caused to be suggested as a fact to plaintiffs, their guardian ad litem, retail customers, and the general public, that it was safe for plaintiffs and other minors to live and play in close proximity to such materials when that fact was not true and defendants, and each of them, did not believe it to be true.

(b)    Defendants, and each of them, suppressed and concealed information relating to the serious hazards, dangers and risks that their LEAD PRODUCTS posed to plaintiffs and other minors, retail customers and the general public by directly requesting the suppression and concealment of such information and by not allowing such information to be disseminated in a manner that would give

K:\Medical\8722\Complaint amend pld.wpd                    13
**AMENDED COMPLAINT**

plaintiffs and the general public notice and knowledge of such hazards, dangers and risks, when defendants, and each of them, were obligated to disclose that information.

(c)    Defendants, and each of them, suppressed and concealed from plaintiffs, plaintiffs' guardian ad litem, retail customers, and the general public, important medical and scientific facts, data, studies, and other knowledge and information establishing the serious hazards, dangers and risks that defendants' LEAD PRODUCTS posed to plaintiffs and other minors, retail customers, and the general public.

(d)    Defendants, and each of them, belonged to, participated in, and financially supported the LEAD ASSOCIATION and other industry organizations which, for and on behalf of defendants, and each of them, *inter alia*, (1) advertised and otherwise campaigned to promote the widespread sale and use of lead paint and other LEAD PRODUCTS by expressly and implicitly warranting that such products were safe to use for the particular purpose of painting homes where children lived and played, and (2) actively worked to suppress and conceal information regarding the serious hazards, dangers and risks that defendants' LEAD PRODUCTS posed to minors and other users thereby misleading plaintiffs, plaintiffs' guardian ad litem, retail customers and the general public with the suggestions and deceptions set forth herein.

(e)    Defendants, and each of them, failed to warn plaintiffs, plaintiffs' guardian ad litem, retail customers and the general public about the fact that (1) defendants' LEAD PRODUCTS were extremely hazardous and dangerous to persons who were EXPOSED to them and (2) defendants' LEAD PRODUCTS silently cause devastating disease and physiological problems without noticeable physical trauma or injury. Defendants, and each of them, engaged in this conduct despite the fact that they knew about the serious hazards, dangers and risks that their LEAD PRODUCTS posed to the health of persons coming into contact therewith

K:\Medical\8722\Complaint amend pld.wpd                    14
**AMENDED COMPLAINT**

and had an absolute duty to disclose such facts to plaintiffs, retail customers and the general public.

(f)     Defendants, and each of them, directly advertised and otherwise campaigned to promote the widespread sale and use of lead paint and other LEAD PRODUCTS by expressly and implicitly warranting that such products were safe to use for the particular purpose of painting homes where children lived and played.

70.     Defendants, and each of them, having the aforementioned knowledge about the hazards, dangers and risks posed by LEAD PRODUCTS, and the absolute duty to inform plaintiffs, their guardian ad litem, retail customers and the general public about the true facts concerning such matters, and knowing the plaintiffs did not and could not possess such knowledge and information without adequate warnings, and that plaintiffs would, therefore, be EXPOSED to LEAD PRODUCTS, acted falsely, deceptively and fraudulently with full intent to cause plaintiffs to remain unaware of the true facts in order to induce plaintiffs to live and play in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the California Civil Code.

71.     Defendants, and each of them, intended that the plaintiffs, retail customers and other members of the general public, would rely on the aforementioned misrepresentations and be deceived by their suppression and concealment of important facts as described herein.

72.     Plaintiffs reasonably relied on defendants' misrepresentations, concealments and deceptions to their detriment because they were ignorant of the true facts as a result of defendants' conduct.

73.     As a direct, legal and proximate result of the acts and/or conduct of defendants, and each of them, as described herein, plaintiffs have suffered DAMAGES.

74.     Defendants and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

75.     Defendants are liable for the oppressive, malicious and fraudulent acts of other defendants and each defendants' officers, directors and managing agents participated in,

K:\Medina\M722\Complaint amend.pld.wpd                    15
AMENDED COMPLAINT

authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of the acts of each of the other defendants as set forth herein.

76. At all times herein mentioned defendants knew that the LEAD PRODUCTS would be applied to surfaces and other materials of dwellings accessible to young children, such as plaintiffs, as alleged herein, and that these substances and products would, therefore, cause personal injury and property damage to plaintiffs and the other members of the general public. Yet, notwithstanding this knowledge, defendants maliciously, oppressively, fraudulently, despicably, and in willful and conscious disregard of the safety of such persons and of the plaintiff, recklessly and intentionally engaged in the tortious conduct described herein without giving any notice of the defect to the plaintiffs and other members of the general public thereby directly, proximately and legally causing plaintiffs to be exposed to serious harm and danger. Plaintiffs are therefore entitled to an award of exemplary or punitive damages.

WHEREFORE, plaintiffs pray for judgment as against defendants, and each of them, as follows:

1. General Damages according to proof;

2. Special Damages according to proof;

3. Punitive damages according to proof
   (for all causes of action except negligence);

4. Costs of suit herein incurred; and

5. For such further and other relief as this court deems just and proper.

Dated: March 20, 2006                    BRAYTON PURCELL LLP

                                         By:
                                         A. Russell Martin
                                         Attorneys for Plaintiffs

K:\Injuries\8712\Complaint.amend.pld.wpd

**AMENDED COMPLAINT**                    16